**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

March 23, 2007

## NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:    Thomas v. Allen**

**Case Number:    2:07cv00254-MEF**

**This Notice of Correction was filed in the referenced case this date to correct the PDF document previously attached due to clerical error.**

**The correct PDF document is attached to this notice for your review.   Reference is made to document # 1   filed on    March 22, 2007.**

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

_Jeffery L. Thomas_ )
Full name and prison number )
of plaintiff(s) )
 )
v. )
 )  2007 MAR 22 A 9: 53
_Richard Allen et al_ )
 )  DEBRA P. HACKETT, CLK
 )  U.S. DISTRICT COURT
 )  MIDDLE DISTRICT ALA.
 )  CIVIL ACTION NO. **2:07-CV-254-MEF**
 )  (To be supplied by Clerk of
 )   U.S. District Court)
 )
 )
 )
 )
 )
 )
 )
 )
Name of person(s) who violated )
your constitutional rights. )
(List the names of all the )
persons.) )

I.   PREVIOUS LAWSUITS
     A.   Have you begun other lawsuits in state or federal court
          dealing with the same or similar facts involved in this
          action?  YES (   )  NO (   )

     B.   Have you begun other lawsuits in state or federal court
          relating to your imprisonment?  YES (   )  NO (   )

     C.   If your answer to A or B is yes, describe each lawsuit
          in the space below.  (If there is more than one lawsuit,
          describe the additional lawsuits on another piece of
          paper, using the same outline.)

          1.   Parties to this previous lawsuit:

               Plaintiff(s) ___Richard Allen et al___

               _____

               Defendant(s) _____

               _____

          2.   Court (if federal court, name the district; if
               state court, name the county) _____

               _____

3.    Docket number _____

4.    Name of judge to whom case was assigned _____

_____

5.    Disposition (for example:  Was the case dismissed?
Was it appealed?  Is it still pending?) _____

_____ *N/A*

6.    Approximate date of filing lawsuit _____

7.    Approximate date of disposition _____

II.    PLACE OF PRESENT CONFINEMENT _____

_____

PLACE OF INSTITUTION WHERE INCIDENT OCCURRED *B.K. Lunkain*
*Correctional Facility* _____

III.    NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR
CONSTITUTIONAL RIGHTS.

NAME                                  ADDRESS

1.    *Richard Allen et.al.* _____

2.    _____

3.    _____

4.    _____

5.    _____

6.    _____

IV.    THE DATE UPON WHICH SAID VIOLATION OCCURRED *Nov. 1998*

_____

V.    STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION
THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE:    _____

_____

2

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND.  (State as best you can the time, place and manner and person involved.)

See Attached P.6.

GROUND TWO: _____

SUPPORTING FACTS: _____ See Attached P6. _____

GROUND THREE: _____

SUPPORTING FACTS: _____

See Attached P6.

3

VI.    STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU.
       MAKE NO LEGAL ARGUMENT.   CITE NO CASES OR STATUTES.

_____

_____ See Attached PG. _____

_____

                              _____
                              Signature of plaintiff(s)

       I declare under penalty of perjury that the foregoing is true
and correct.

       EXECUTED on _____ 8/14/07 _____ .
                          (Date)

                              _____
                              Signature of plaintiff(s)

                                          4

(2). The petitioner avers, that the Alabama Correctional Incentive Time Act, (14-9-41), Code Of Alabama, Acts 80-446) violates administrative procedures, violates state constitutional requirements for passage of legislation or federal protection and "due process" guaranteed in the way that it has and still being administered by selective implenmentation through the department of corrections classification and administrative department.

(3). Acts 80-446, violates article 4, of the alabama constitution because it contains a provision which broaden the scope of the act beyond that expressed in the title.

(4). Acts 80-446, violates Article 4, 61, of the alabama constitution (1901), because an amendment to the act changed the original purpose of the act.

(5). Acts 80-446, on its face, violates the "equal protection" guarantees of the fourteenth amendment, Article 4, each law shall contain one subject, which shall be clearly expressed in this title,(in its title).

## HABITUAL FELONY OFFENDERS

Acts 80-446 prohibited felony offenders from receiving any deduction from their sentence...however, in 1991, this act was in effect from an earlier legislative passage (1981). In 1991, the "goodtime Incentive Act" 14-9-41, was amended, this amended act allowed inmates with 15 years or less to receive the benefits of receiving incentive goodtime credits. This amendment also allowed habitual offenders to receive goodtime credits and deductions from their sentence. This amended act was, in violation of acts 80-446.

(6). Acts (80-446), codified in (14-9-41) code of alabama reads...
(A). Each prisoner who shall thereafter be convicted of any offense against the laws of the state of alabama and is confined, in the execution of judgment or sentence upon any conviction, in the penitentary or at hard labor for the county or any municipal jail for a definate or inderterminate term, other than for "life" whose records of conduct shows that he has faithfully observed the rules for a per-

iod of time to specified by the article may be entitled to earn a
deduction from the term of his sentence as follows:
(1). SEVENTY-FIVE (75) DAYS FOR EACH 30 DAYS ACTUALLY SERVED WHILE
THE PRISONER IS CLASSIFIED AS A CLASS (1) PRISONER,

(2). FORTY(40) DAYS FOR EACH (30) DAYS ACTUALLY SERVED WHILE THE
PRISONER IS A CLASS (2) PRISONER,

(3). TWENTY (20) DAYS FOR EACH (30) DAYS ACTUALLY SERVED WHILE THE
PRISONER IS A CLASS (3) PRISONER

(4). No goodtime shall accrue during the period the prisoner is class-
ified as a Class IV prisoner.
(b). Within 90 days after may 9, 1980, the commissioner of the de-
partment of corrections shall establish and publish appropriate dir-
ective certain criteria not in conflict with this article for class
1,2,3, and 4 prisoners, classification shall encompass consideration
of the prisoners behavior, discipline, and work practices and job
responsibilities.

(7). The petitioner avers that, he has been denied goodtime credits
based soley on the length of his sentence 14-9-41(e), yet, he has
been classified at one time or another during his incarceration as
a class 1,2,3, and 4 prisoner.  The petitioner has been to work re-
lease, honor camps, and work camps, throughout his incarceration he
has proven through the years to be cooperative and respect authority,
work hard on every detail, and has proven to be trust worthy.  The
petitioner did not receive any goodtime credits while in those classes.

(8). The commissioner has implemented a policy in classifing prisoners
to a certain class...class 1,2,3, and 4.  When prisoners is placed
in either class of the above classes, there is a procedure and policy
that the prisoner mest comply with in order to stay in that class
or move to a higher but less restrictive class.  Each class is im-
plemented around an inmates behavior, disciplinary history, disci-
pline and ability to work.  Each class afford that prisoner a certain
amount of goodtime to be earned and a deduction from his sentence
while in that particular class.  The department of correction are
placing prisoners in those classes, but are denying to them the good-
time while in that class, that is afforded to them by that class,
14-9-41 Of the code of alabama, (14-9-41) of the code of alabama

governs the amount of goodtime credits each prisoner must earn or can earn while in a particular class. This section also governs the amount of time a prisoner must remain in a particular class before being eligible for a lesser restrictive class. Prisoners are being placed in 1,2,3, and 4 under a condition that has been imposed, and implemented by the alabama legislature which governs the prisoners conduct, behavior, and ability to adjust to prison "life", however prisoners are being denied the benefits to receive incentive goodtime credits in that class by the department of corrections, even though each class affords prisoners the priveledge to receive those credits
. Prisoners with "SEX" CRIMES AND VIOLENT" OFFENDERS RECEIVE THE BENEFITS of goodtime credits while prisoners with none violent or property crimes are being denied goodtime credits or any reduction from their sentence while in those classes...the inmates which are supposed to be prohibited from earning goodtime credits are "habitual offenders" those convicted of a class "A" felony and "Trafficking" are in fact the very ones that are receiving goodtime credits.

(9). Acts 80-446, codified in 14-9-41 code of alabama reads:

(1). Class 1 is set aside for those prisoners who are (considered), to be trustworthy in every respect and who, by virtue of their work habits, conduct an attitude of cooperation, have proven their tru habits, conduct an attitude of cooperation, have proven their tru worthinestworthiness. an example of a class 1 prisoner is one who could th- work without constant supervision by a security officer.

(2). Class 2 is that category of prisoners who will be under the supervision of a correctional employee at all times. Any inmates shall remain in this class for a minimum period of (6) months be- fore being eligible for class 1.

(3). Class 3 is set aside for prisoners with specisl assignments. They may not receive the priveleges of class 1 and 2 prisoners. Any inmate shall remain in this classification for a period of minimum of three months before being eligible for class 2.

(4). Class 4 is for those prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infraction of such a nature which do not warrant a "higher classification". In- mates that are classified in this earning class receives no corre- ctional incentive goodtime. This class is generally referred to as

flat time or day for day.  Any inmate shall remain in this class-
ification for a minimum of thirty (30) days before being eligible
for class (3).

There is nothing contained in class 1,2, or 3 which prohibits a
prisoner from receiving goodtime credits while in that class, yet,
the department of corrections are denying inmates goodtime while
in class 1,2,or 3 based soley on the length of their sentence with-
out any consideration to the seriousness of their offense, crimes
or convictions.  Prisoners that have been prohibited from earning
goodtime by the legislature deeming their crimes to serious to re-
ceive beneficiary treatment are receiving goodtime by the department
of corrections while in class 1,2,or 3......(SEX OFFENDERS AND
CHILD MOLESTORS SHOULD NOT RECEIVE ANY REDUCTIONS FROM THEIR SEN_
TENCES AND CONVICTION)

(11). The petitioner avers that, he is being denied "equal pro-
tection" of the law under 14-9-41, subsection (e) because, he has
been sentenced to a term over (15) years.

(A). Example; the legislature amended section (15-18-8) code of
alabama may 19, 2000, to allow prisoners that are sentenced to a
term of imprisonment 20 years or less to have their sentence split
yet, the legislature obviouely deemed the nature of their offense
to serious to merit the benefits of receiving goodtime sentence re-
ductions.  It is reasonable to assume that the legislature also
concluded that anyone who receive  a sentence in the class :A"
felony range would not merit beneficial treatment....when a prisoner
is convicted of a class "A" felony and receive a sentence oe 20 years
and have that sentence split to serve three years incarceration and
the maximum years of five years probation, that prisoner will be
allowed to complete his entire twenty(20) years sentence in eight
(8) years without any further supervision by the state of alabama,
however, when a prisoner is sentenced to that same term of impris-
onment and does not have his/her sentence split under the split
sentence act, that prisoner will have to serve his entire sentence
either on parole, if paroled, or in the department of corrections.
When 15-18-8 split sentence act was amended, the goodtime incentive
act 14-9-41 of the code of alabama should also have been amended  in
order to bring the same prisoners and less violent prisoners within

the same category of sentence reductions under "equal protection" of the law.

(1). One of the purposes of the requirement of this section 45,supra, that the subject of law shall be clearly expressed in the title, is to prevent surprise or fraud upon legislature by incorporating in "Bill" provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting(THE BILL), 247 so 2d (123 so 2d 505).

(2). The incentive goodtime credit statute is being applied arbitrary and selective by the department of corrections against legislative intent.

(3). Prisoners are being denied goodtime soley on the length of their sentences and not the seriousness of their offense.

(4). Inmates are classified under a behavior system.  This system classify(s) inmates and place them in a class 1,2,3, each class provides inmates with the opportunity to receive goodtime credits and reduction of sentence.

(5). Repeated "SEX" offenders and repeated "VIOLENT" offenders re- ceives benefits of incentive goodtime credits while the majority of inmates with less serious crimes to include "none violent" off- enses are being denied such incentives.

(6). Inmates are categorically denied goodtime by the department of corrections which is in violation of legislature intent:SEE LOPEZ V. DAVIS.

(A). Act 80-446 violates alabama constitutional amendment: section 61 by its 1991 amemdment,
Act 80-446 "Incentive Goodtime Credits" was passed in 1980, by the alabama legislature, the "BILL" denied goodtime credits to prisoners who had been sentenced to "life" or "Death", subsection (e) broaden those credits to deny prisoners who have been convicted of a class "A" felony, those who received a sentence of 10 years now (15) years , and, no person may be placed in class 1 if he/she has been convicted of an assault where the victim of such assault suffered the permanent

loss or use or permanent partial loss or use of any bodyily organ
or appendage, those that has been convicted of sexaul assault upon
a "child" under 17 years old are prohibited form earning class 1 cre-
dits, but not class 2 or 3 earning class.
The habitual offender act of 1981, also prohibited prisoners that
has been sentenced as a habitual offender from receiving any reductions
from sentence. Habitual offenders were not the only class that was
prohibited from earning goodtime by the legislature statute, inmates
who received a sentence of 10 years or more and those inmates who
receives a sentence in the class "A" felony was also precluded. (min-
imum sentence a habitual offender can receive is 15 years).

Act 80-446 was amended from 10 years to 15 years, act of july 31, 1991,
No. 91-637, codified at ala. code 14-9-41 (e) act 1201 effective oct-
ober 29, 1991.  The act was amended because the prison system was
"dangeriously overcrowded" with habitual offenders, when this act
was amended it "drastically" changed the purpose of the act.  The
amendment allowed the habitual and repeated habitual felony offenders
the benefits of receiving goodtime credits and a reduction from their
sentence in violation of legislative intent...(this was totally against
the legislative purpose of passing the act). The legislature in pass-
ing act 80-446, made it be known that habitual felony offenders would
not receive any goodtime or reduction from sentence pursuant to this
act.  This amendment was also applied retroactively... when the act
was amended to allow goodtime credit and reduction from sentence,
this amendment also denied inmates "equal protection" of the law
when this amendment did not grant inmates who was a habitual offender
with sentences of 15 years or more. The legislature not only denied
habitual offenders goodtime, but also denied prisonerd who were con-
victed of a class "A" felony or received a sentence in the class "A"
felon range, (when a prisoner receive a sentence of 10 years or more,
that doesn't mean that person has commited a serious offense.
Brooks v. State 622 so 2d 447 (reversed and remanded), denial of
goodtime credits violated prisoners equal protection when the reason
for such denial was based soley on the time of conviction and not
determination about the nature or seriousness of the offense.  The
court observed that it was rational to deny goodtime benefits to
both class "A" felony(s) and those who have been sentenced to 10
years or more, because the latter group receives a sentence in the
class "A" felony range, and therefore, could be considered serious

offender, the maximum sentence for a class "A" felony is 10 years. Alabama code 13A-5-6.. are... ineligible for goodtime because the legislature deemed the nature of their offense to serious to merit the benefits of goodtime sentence reduction.  It was resonablt assumed that the legislature also concluded that anyone who received a sentence in the (legislative act) class "A" felony range would also not merit beneficial treatment.  Thomas v. state 552 so 2d 875, Gaines v. State 581 so 2d 448.  The supreme court concluded that there is a "preceivable" set of facts under which a statutory discrimination against "Sex Offenders" is revelant to and justified by permissible legislative purpose, that perceivable set of facts includes the possibility that a convicted sex offender who is not rehabilitated might might be released early.

When the legislature amended 14-9-41 (e) in 1991 from 10 years to 15 years, it qualified the habitual felony offenders to receive goodtime credits, this amended act  came in conflict with prior legislative law which prohibited habitual offenders from receiving goodtime, this amendment also expanded the goodtime eligibilty to include inmates sentenced to longer prison terms presumably for a more serious crime. 275 ala 254, opinion of justice...one of the purpose of the requirement of section 45, supra, that the subject of a law shall be clearly expressed in its title, to prevent surprise or fraud upon the legislature by incorporating its bill provision not reasonably disclosed by its title, and which might be overlooked. Kendrick v. Boyd 255 Ala. 53, so 2d 694, Taylor v. Johnson 265 Ala. 541.

Ex-Parte Hilsabeck 477 so 2d 472.  The purpose of act 80-446, is clearly expressed as one to establish the "Alabama Correctional" incentive act", that alone state that the legislature deals with goodtime for inmates.  The next title respectfully states that the act establishes "certain criteria" for earned deductions and creates "classification for measurment of such deductions and eligibility thereof (habitual offenders) are mention as one of the groups excluded from earning gooodtime credits...Act 80-446 violates article 4 section 61, of the alabama constitution .  Section 61 provided "no law shall be so altered or amended on its passage through either house as to change  its original purpose.

Acts 80-446 was made clear and unambigious in its provision when uncertainty was injected into the act when its provisions was attempted to be broaden or expanded the language of the act.

(Rickett v. State 903 F. 2d 447) Selective and disparate treatment violation
of equal protection.   (Impermissable Classification) Wayne v. State, 84 L. ed
2d 547.

Alabama deals with a racial classification system embodied in a criminal stat-
ute the 1991 amendment does not order the exclusions by defining the statutory
terms of prisoners convicted of "none violent" offenses or the cognate terms c-
rimes of violence instead, the current regulation relies upon the discretion all-
oted to the commissioner of the department of corrections in granting a sentence
reduction to exclude categories of inmate, the administration regulation, designed
to achieve consistent  administrative of the incentive, now provides,

(1). Inmates who are sentenced to 15 years are less to include habitual criminals
the priveledge of receiving goodtime credits and allowed violent offenders with
longer prison terms that was prohibited by the legislature to receive goodtime
under the new amended act.
Inmates with less serious crimes and property crimes are being denied goodtime
credits based soley on the length of their sentence.  They are also "Bracketed"
in a category with violent offenders because the department of corrections sug-
gests that they poses a particular risk to the public...while the plaintiff
has been incarcerated he has been classified as a class 1,2,3, prison-
er at some point during his incarceration to include less restrictive
camps, but has been categorically denied the benefits of good time
while in these class.

The question to be answered pertaining to this fact of law is; could
the department of corrections place an inmate in a category which
grants goodtime credits, and then deny that inmate goodtime credits
based soley on the length of his sentence without consideration as to
the seriousness of the crime?  This kind of selective action by the
department of corrections is what caused the statute to be ambigious
and deny him equal protection, and due process of law.  If the leg-
islature wanted the department of corrections to reduce the category
of inmates eligible for early release incentives(beyond the ones id-
entified by the legislature), the legislature would have specifically
placed this grant of authority in the language of the statute.  And
if the department of corrections have discretion to deny early re-
lease to some inmates, but only based on an inmates sentence and not
the factors therein, then the agency cannot categorically deny early

release even to the recidivist with prior, or perhaps "multiple" convictions of "rape" "robbery", "homicide" or any other crime of violence. The question to this issue is: did the legislature of alabama intended for all inmates to receive some reductions from their sentence who has been convicted of none violent crimes?

Did the alabama legislature intended for "Sex" offenders and repeated "Violent" offenders to receive goodtime credits and receive a early release from prison?

Did the legislature intended for habitual felony offenders to receive goodtime credits and an early release from their sentence?

Did the legislature intended to allow inmates with sex offenses, and violent offenses to receive the benefits of goodtime credits, and deny inmates with property offenses this benefits based soley on the length of a person sentence and not the seriousness of their offense? We deal here with a ambigious statute, which grants goodtime credits to the majority of "sex" offenders, and denies goodtime to a majority of inmates who has been convicted of less serious crimes where the power of the states weighs most heavily upon the individuals or group, we must be especially sensitive to the polices of the equal protection clause which, reflected in legislative  enactments dating from 1870, were intended to secure "full and equal benefits of all laws and proceedings for the security of persons" to like punishments, pains, penalties, taxes, liscenses, and exactions of every kind, and to others. When the law lays an unequal hand on those who have commited instrincically the same quality of offense and sterilize one and not the other, it has made invidious a discrimination as if it had not the other, it has selected a particular race or nationality for oppressive treatment. (Yick Wo v. Hopkins 80 L. ed 2d 220).
Subsequent legislation declaring the intent of an earlier statute is entitled to significant weight...although a mistaken opinion of the legislature concerning meaning of an earlier statute does not itself make law, such an opinion must never the less be given the effect of law, prospectively if it is expressed in words competent to make make. Since it is within the power of the legislature for the future, although inoperative as the past

The pronouncement of legislative commitee respecting, the manning
of previously enacted statute was entitle to consideration weight
in the judicial construction of the statute, where the commitee in
question was the one which had reported the bill on which the st-
atute was based (Quern v. Mandley 56 L. ed 2d 134 918) See; also(Mc-
laighin v. Florida 18 L. ed 2d 222) (Brown v. Dubchesne, 15 L. ed 2d
595 (NLRB V. BELL AEROSPACE CO. 40 L. ed 2d 134)(Pronouncement of leg=
islature 50 L. ed 2d 918) (Statutory Generally 41 L. ed 2d 134)(Thorton
v. Hunt 852 F. 2d 526)(95 A.L. R. 2d 1256)(Brooks v. State 622 so 2d 477)
(Classification Of Inmates)(Construction of Law)(Conlogue v. Shinbaum
49 F. 2d 378)(Frazier v. Munson 703 L ed 2d 30)(Faulkner v. State
586 so 2d 39)(Hilsabeck)(Ex parte Hilsebeck 477 so 2d 465).......


### "SEX OFFENDERS"

McKune v. Lile (2000) 153 L. ed 2d 47, "Sex Offenders" are serious
threat in this nation, in 1995, an estimated 395,000 rapes and sexual
assaults occured nationwide.  U.S. Department of justice, bereau of
justice stastics, sex offenders offenses reported between 1980 and
1994, the population of imprisonment of sex offenders increased at a
faster rate than any other category of violent offenses,(violent crimes).
As in most sexual cases, the victim of sexual assault are most juveniles.
In 1995, for instances, a majority of the reported forcible sexual off-
enses were commited against persons under 18 years of age...(University
of New Hamsphire) crimes against children research center fact sheet.
Nearl 4 out of 10 imprisoned, violent sex offenders said their victim
was 12 years of age or younger...when convicted sex offenders re-enter
society, they are much likely to re-offend, be re-arrested for a new rape
or sexual assault.

Lopez v. Davis 531 U.S. 230, 148 L. ed 2d 635, 121 S. ct 714,
Title (18 usc & 3621) Governs the imprisoment of persons convicted of
federal crimes.  In 1990, congress amended the statute to provide
that the bereau shall... make availible appropriate substance abuse
treatment for each prisoner. The bereau determines who has a treatable
condition of substance addiction or abuse. Four years later, congress
again amended 3621. This time to provide incentives for prisoners
participating in the program.  The incentive provision of that section
reads: the period of a prisoner convicted of none violent offenses
remains in custody after successfully completing a treatment program

may be reduced by the bereau of prisons, but such reduction may not
be more than one year from the term the prisoner must otherwise serve.


In 1995, the bereau published a rule to implement the early release
incentive.  60 Fed reg 27692-27695; CFR & 550. 59.  Because the stat-
ute explicitly confined the incentive to prisoners convicted of "none
violent" offenses 18 U.S.C. & 3621(e) (2) (b), the BOP ranked ineli-
gible for early release all inmates currently incarcerated for crimes
of violence. 60 Fed Reg 27692. As explained in the BOP program statement
, the BOP defined "crimes of violence" to include a drug trafficking
conviction under 21 USC.
3621 (e)(2)(b) required the bereau to look into only offenses of
conviction (drug trafficking), and not to sentencing factors(Fire arm
possession), in determining whether an offender was convicted of a none
violent offense, and therefore eligible under the statute for the early
release incentive.
In contrast to the earlier rule.  However, the 1997 regulation does not
order this exclusion by defining the statutory term prisoners convicted
of a none violent offense, or cognate term crimes of violence.  Instead,
the current regulation relies upon the discretion allotted to the dir-
ector of the bereau of prisons in granting a sentence reduction to ex-
clude categories of inmates.  The regulation designed to acheive  con-
sistent administration of the incentive, now provides:
(a). Additional early release criteria. (1) as an exercise of the dis-
cretion invested in the director of the BOP, the following category
of inmates are not eligible for early release:


(IV) Inmates who have a prior felony or misdemeanor coviction for
homicide, forcible rape, robbery, aggravated assault, or child sexual
abuse offenses;


(IV). Inmates whose currently offense is a felony:
(B) That involved in carrying, possession, or use of a firearm or
other dangerous weapon...to the bureau asserted discretion to pre-
scribe additional early release criteria.  Drug trafficking who poss-
ess firearms when they engage in crimes are no longer characterized
as "violent offenders" within the meaning of the statute.  But they
are bracketed, for the sentence reduction purpose with persons cur-
rently incarcerated for "non violent" offenses who in the pass comm-

ited crimes that qualified as violent. The preconviction conduct of both armed offenders and certain reciivist in the bureau's view, suggest that they pose a particular risk to the public...In 1997, the petitioner Christopher A. Lopez was convicted of possession with intent to distribute methamphetamine in violation. Upon finding that lopez possed a firearm in connection with his offense, the district court enhanced his sentence two levels. While incarcerated, Lopez requested substance abuse treatment. The bureau found him **qualified** for the resident drug treatment program, but categorically ineligible for early release. The court reversed. (Bellis v. Davis 186 F. 3d 1092 1991). The statute provides the period a prisoner convicted of a non violent offense remains in custody after successfully completing a drug treatment program may be reduced by the BOP.

The measure thus categorically denies early release eligibility to inmates convicted of violent offenses. The question we address is whether the bureau has discretion to delinate, as an additional category of ineligible inmates, those whose current offenses is a felony conviction involving a fire arm.

Lopez urges that the statute is unamibigious, he says that, by identifying a class of inmates ineligible for sentence reduction under 3621 (e) (b), those convicted of a violent offense, congress has barred the bureau from identifying further categories of ineligible inmates. If congress wanted the BOP to reduce the category of inmates eligible for early release incentives(beyond the ones identified by congress) congress would have specifically placed this grant of authority in the language of the statute. Congress used the word "may" rather than "shall", has no significance. And if the BOP does have discretion to deny early release to some inmates, but categorically deny early release even to the recidivists with prior (perhaps multiple) convictions of rape, robbery, homicide etc., for that provision, as much as the exclusion of inmates imprisioned for the offense involving a fire arm , entails no individualized determination based on post-conviction conduct. (A prisoner serving a term of one year and less than life, may receive credits towards the service of the prisoners sentence...subject to determination by the BOP that, during that year the prisoner has displayed exemplary compliance with such institutional disciplinary regulations").

The question at issue in this case, is whether congress merely intended for some of federal inmates who were convicted of non violent crimes and who has successfully completed a bureau of prisoners drug treatment program are eligible for sentence reduction...the court stated; I believe congress has answered the precise question. The ststute expessely states that the sentence of every prisoner in that category "may be reduced", both the text of the statute and the aforementioned history demonstrate that congress directly addressed the precise question of what offense ought to be disqualified and prisoners disqualifcation for eligibilty for sentence reduction, and its "unambigious answer was "violent offenses". Under the statute as enacted, those who commited crimes of violence are categorically barred from receiving sentence reduction while those convicted of none violent offenses "may" receive such an inducement.

## HISTORY

The plaintiff, Jeffery L. Thomas #158680, is an inmate at G.K. Fountain Correctional Facility. Plaintiff is serving a term of (15) years for rape 1st degree.

The plaintiff Jeffery L. Thomas #158680, was sentenced to (15) years pursuant to a guilty plea in exchange for probation in the Jefferson County Circuit Court on or about Nonember 1998.

The plaintiff seeks declaratory judgment against the defendant(s) to determine whether the defendant(s) are constitutionally in violation of §14-9-41, code of alabama, when they illegally amendment subsection (e) to the preexisting statute thereby allowing some prisoners that are similiar situtated as the plaintiff deductions off sentence while denying plaintiff, thereby conflicting with clear legislative intent of the aforementioned statute.

Jeffery L. Thomas
A. I. S.# 158680
Fountain 3800
Atmore, AL. 36503



MOBILE,
MAR
2007

UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004309410    MAR 20  2007
$ 00.39⁰
MAILED FROM ZIP CODE 36502

LEGAL

Office of The Clerk
United States District Court
P. O. Box 711
Montgomery, Alabama 36101-0711